UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NISHIKA NIBBER,

                Plaintiff,

         v.

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, *et al.*,

                Defendants.

Civil Action No. 20-3207 (BAH)

Chief Judge Beryl A. Howell

**MEMORANDUM OPINION**

Plaintiff Nishika Nibber seeks a preliminary injunction compelling defendants, the U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), and the heads of those agencies in their official capacities, to adjudicate her pending applications to extend her H-4 nonimmigrant status and renew her Employment Authorization Document ("EAD"). *See generally* Pet. for Writ of Mandamus & Compl. for Injunctive Relief ("Compl."), ECF No. 1. Upon consideration of plaintiff's Motion for Preliminary Injunction ("Pl.'s Mot."), ECF No. 9, the memoranda submitted in support and opposition, and the entirety of the underlying record, plaintiff's motion is denied for the reasons set forth below.

**I.    BACKGROUND**

    **A.    Statutory and Regulatory Background**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, allows for the temporary admission of nonimmigrant aliens into the United States "to perform services . . . in a specialty occupation" through the H-1B visa program, *id.* § 1101(a)(15)(H)(i)(b). A nonimmigrant employee's H-1B visa, obtained through a petition filed by the employee's sponsoring employer (known as a "Form I-129"), is valid for an initial period of up to three years

and can be extended for an additional three years. *Id.* § 1184(g)(4); 8 C.F.R. §§ 214.2(h)(9)(iii)(A)(1), (h)(15)(ii)(B)(1). H-1B visa holders with certain employment-based petitions for immigrant status or labor-certification applications pending on their behalf may have their H-1B status extended beyond the six-year maximum. *See* 8 U.S.C. § 1184 note. Though Form I-129s are typically considered in the order in which they are received, an applicant's sponsoring employer may elect to pay a premium processing fee "to jump the line" and guarantee that USCIS will adjudicate the petition within fifteen business days. *Pasem v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-344 (CRC), 2020 WL 2514749, at *1 (D.D.C. May 15, 2020); *see also* 8 C.F.R. § 106.4; *How Do I Request Premium Processing?*, USCIS (June 18, 2020), https://www.uscis.gov/forms/all-forms/how-do-i-request-premium-processing.

The INA also authorizes nonimmigrant "H-4 status," which designation permits the spouse and minor children of an H-1B visa holder to be admitted to the United States under H-4 visas, simultaneous to the admission of the H-1B visa holder. *See* 8 U.S.C. § 1101(a)(15)(H). An H-4 visa applicant or holder within the United States may apply to obtain or to extend H-4 status by submitting to USCIS a completed Form I-539, Application to Extend/Change Nonimmigrant Status ("Form I-539"). Once approved, whether as a new visa or as an extension of a previously issued visa, the H-4 visa is subject to the same period of admission as the related H-1B visa. *See* 8 C.F.R. § 214.2(h)(9)(iv). H-4 status does not itself grant an individual the ability to work in the United States, but USCIS regulations allow certain H-4 visa holders to apply for an EAD if the related H-1B visa holder is the beneficiary of an application for legal permanent residence. 8 C.F.R. §§ 214.2(h)(9)(iv), 274a.12(c)(26). To request employment authorization, an eligible H-4 visa holder must file a complete Form I-765, Application for Employment Authorization ("Form I-765"), pursuant to 8 C.F.R. § 274a.13, accompanied by

"documentary evidence establishing eligibility, including evidence of the spousal relationship" between the H-4 visa holder and the H-1B visa holder, evidence that "the principal H-1B [holder] is the beneficiary" of an application for legal permanent residence, and evidence that the H-1B beneficiary and the H-4 visa holder are current in their respective immigration statuses, 8 C.F.R. § 214.2(h)(9)(iv).

Effective March 11, 2019, USCIS instituted an additional requirement for all Form I-539 applicants to appear in person at the USCIS Application Support Center closest to the applicant's primary residence and submit biometric data in support of both their I-539 application and any accompanying I-765 application. *See* 8 C.F.R. § 103.2(b)(9); *UPDATE: USCIS to Publish Revised Form I-539 and New Form I-539A on March 8*, USCIS (Mar. 5, 2019), https://www.uscis.gov/news/alerts/update-uscis-to-publish-revised-form-i-539-and-new-form-i-539a-on-march-8; Decl. of Jennifer A. Roller ¶¶ 3–4 ("Roller Decl."), ECF No. 11-3.

The adjudication of a Form I-539 application for H-4 status and a Form I-765 are interrelated. While the two forms can be filed concurrently, USCIS cannot adjudicate an applicant's Form I-765 until a determination is reached on the underlying Form I-539. *Employment Authorization for Certain H-4 Dependent Spouses* ("*Employment Authorization Rule*"), 80 Fed. Reg. 10,284, 10,297–98 (Feb. 25, 2015) (codified at 8 C.F.R. §§ 214.2, 274a). An H-4 visa and accompanying EAD have the same expiration date as the related H-1B visa, and so an H-4 visa holder's Form I-539 and Form I-765 are also closely related to the H-1B visa holder's Form I-129. Thus, like Form I-129, Form I-539 and Form I-765 cannot be submitted more than six months prior to the shared expiration date of the H-1B visa, the H-4 visa, and the H-4 visa holder's EAD. *See* 8 C.F.R. §§ 214.2(h)(3)(iii)(I), (9)(iv), 274a.13(a); *Instructions for Petition for Nonimmigrant Worker* at 30, USCIS (Sept. 30, 2020), https://www.uscis.gov/sites/

default/files/document/forms/i-129instr.pdf.[1]  While Form I-129s may be adjudicated on a expedited basis if a sponsoring employer pays the premium processing fee, the biometrics requirement prevents USCIS from adjudicating Form I-539s and I-765s for H-4 visa holders, even if filed with premium Form I-129s, within the same fifteen-day timeline.  Roller Decl. ¶ 4.

**B.  Factual Background**

Plaintiff Nishika Nibber has lawfully resided in the United States as a nonimmigrant since January 11, 2008, first under a student visa, then as a nonimmigrant H-1B worker, and, since 2015, as an H-4 visa holder.  Compl. ¶ 23; *see also id.*, Ex. A, Pl.'s H-4 Receipt Notice & Approval Notices ("H-4 Documents"), ECF No. 1-2; Aff. of Pl. Nishika Nibber ("Pl.'s Aff.") ¶¶ 3–7, ECF No. 9-2.  Plaintiff's spouse, Deepak Bhanot, is an H-1B visa holder with an approved petition for lawful permanent residence currently pending on his behalf.  *See* Compl., Ex. C, Pl.'s Spouse's H-1B Approval Notices ("H-1B Documents"), ECF No. 1-4; *id.*, Ex. D, Pl.'s Spouse's I-140 Approval Notice, ECF No. 1-5.  His immigration status renders plaintiff, as a dependent spouse, eligible for H-4 status, employment authorization, and eventually, lawful permanent residence as a derivative beneficiary.  *See* Compl. ¶¶ 23–24; *supra* Part I.A.

Plaintiff was first approved for H-4 status on October 1, 2015, H-4 Documents at 3, and received employment authorization two weeks later, on October 15, 2015, *see* Compl., Ex. B, Pl.'s H-4 EAD Receipt Notice, Approval Notices, & EAD ("EAD Documents") at 5, ECF No. 1-3.  On September 8, 2017, USCIS renewed plaintiff's H-4 status and employment authorization, with an expiration date of November 30, 2020.  Compl. ¶ 23; *see also* H-4 Documents at 2; EAD

---

[1] Although EADs for certain nonimmigrant workers are automatically extended for 180 days if the EAD holder submits an application for renewal before the EAD's expiration, *see* 8 C.F.R. § 274a.13(d)(1), (3), USCIS and DHS determined that H-4 dependent spouses are not eligible for automatic EAD extensions due to DHS's "concern[] with improperly granting employment authorization to an H-4 dependent spouse who is ineligible for it," *Employment Authorization* Rule, 80 Fed. Reg. at 10,299.

4

Documents at 2, 4.  Her spouse's H-1B visa was also scheduled to expire on November 30, 2020.  H-1B Documents at 3.  Six months before this date, on May 31, 2020, plaintiff and her spouse became eligible to apply for extensions of their respective immigration statuses and plaintiff's EAD.  Roller Decl. ¶ 9; *see supra* Part I.A.  Bhanot's employer, 3i Infotech, elected to wait to file his Form I-129 petition until it finalized details regarding Bhanot's new work assignment, preventing plaintiff, as a derivative beneficiary, from filing her Form I-539 and Form I-765 applications at the beginning of the six-month window.  Suppl. Aff. of Nishika Nibber ("Pl.'s Suppl. Aff.") ¶ 4, ECF No. 18-2.  On August 26, 2020, plaintiff and her spouse filed a Form I-129, Form I-539, and Form I-765, seeking to extend Bhanot's H-1B visa, plaintiff's H-4 visa, and plaintiff's EAD.  *See* H-1B Documents at 1–2; H-4 Documents at 1; EAD Documents at 1; Roller Decl. ¶ 10.

As of this writing, plaintiff has not appeared at a USCIS Application Support Center to provide biometric data, and her Form I-539 and Form I-765 applications are therefore considered incomplete.  Third Aff. of Nishika Nibber ("Pl.'s Third Aff.") ¶ 1, ECF No. 20-1.  This is not due to any lack of effort on plaintiff's part, however.  USCIS schedules biometrics appointments for applicants and sends applicants a notice informing them of the date and time at which they must appear to submit data.  Due to the COVID-19 pandemic, USCIS stopped all in-person services at its Application Support Centers as of March 18, 2020, and began "phased reopening" of the centers only four months later, on July 13, 2020.  Roller Decl. ¶ 6.  This four-month closure created a significant backlog in scheduling for biometrics appointments.  *Id.* ¶ 13.[2]

---

[2]   Effective March 18, 2020, USCIS began "using previously submitted biometrics" to process applications while Application Support Centers were closed, "until [Application Support Centers were] open . . . to the public." *See USCIS to Continue Processing Applications for Employment Authorization Extension Requests Despite Application Support Center Closures*, USCIS (Mar. 30, 2020), https://www.uscis.gov/news/alerts/uscis-to-continue-processing-applications-for-employment-authorization-extension-requests-despite.  Application Support Centers reopened on July 13, 2020, Roller Decl. ¶ 6; as a result, USCIS represents that it is no longer using previously submitted biometrics, *see* Defs.' Report Regarding the Status of Pl.'s H-4 Appl. ("Defs.' Report") at 2–3, ECF No.

Plaintiff has yet to receive a notice for a biometrics appointment, Pl.'s Third Aff. ¶ 1, and was advised by USCIS, on October 23, 2020, that the agency was "unable to provide a timeframe for when a new biometric appointment will be assigned, or notice issued at this time," Pl.'s Report, Ex. 2, Pl.'s USCIS Case Status Inquiries at 3, ECF No. 20-3.  On December 4, 2020, USCIS informed plaintiff that "[b]iometrics appointments are scheduled as slots become available" at the relevant Application Support Center.  *Id.* at 6 (emphasis omitted).

USCIS approved Bhanot's Form I-129 on September 2, 2020, extending his H-1B status through August 1, 2023.  H-1B Documents at 1.  Plaintiff thus remains eligible for derivative H-4 status and employment authorization through August 1, 2023, *see* Roller Decl. ¶ 7, but her applications are still pending.  They are being processed at USCIS's Nebraska Service Center, where the processing times for Form I-539s and Form I-765 range from 5.5 to 7.5 months, *id.* ¶ 5, with "an average processing time of 6.5 months," Defs.' Report at 2.

On October 14, 2020, plaintiff requested expedited processing of her I-539 application, Pl.'s Third Aff. ¶ 4, which request was denied on October 17, 2020, Compl. ¶ 67; *id.*, Ex. F, Denial of Pl.'s Request for Expedited Processing at 1, ECF No. 1-7; Roller Decl. ¶ 18, because plaintiff did not have biometrics on file as part of her application and was therefore ineligible for expedition, Pl.'s USCIS Case Status Inquiries at 1.  In the absence of a renewal decision by USCIS, plaintiff's EAD expired on November 30, 2020, and she currently is not authorized to work in the United States.  The agency has represented in this litigation that "a fair estimate of the status of [p]laintiff's application is that it will be adjudicated in about three months, or by March 2021."  Defs.' Report at 2.

---

19, and that, in any event, USCIS has no biometrics on file for plaintiff because she was not required to submit them in support of her previous applications, *id.* at 2.

Prior to the expiration of her EAD, plaintiff was employed "full-time as a contractor in the position of a Business/UAT Analyst for Fannie Mae, for approximately 40 hours per week." Pl.'s Suppl. Aff. ¶ 1. She has also been "in the process of opening a restaurant in Herndon, Virginia" with her spouse. Pl.'s Statement P. & A. Supp. Pl.'s Mot. Prelim. Inj. ("Pl.'s Mem.") at 7, ECF No. 9-1; Pl.'s Aff. ¶ 16; Pl.'s Suppl. Aff. ¶ 5. The restaurant recently opened, and plaintiff has hired six employees to work there. Pl.'s Suppl. Aff. ¶ 5. Plaintiff intended to continue her work for Fannie Mae to fund operating expenses and employee wages at the restaurant, *id.*, but her employment ended upon the expiration of her EAD on November 30, *id.* ¶ 3. In addition, plaintiff's Virginia driver's license expired with her EAD, as the Commonwealth of Virginia does not renew driver's licenses without proof of valid immigration status. *See* Compl., Ex. E, Pl.'s Driver's License, ECF No. 1-6; Pl.'s Aff. ¶ 19.

### C.  Procedural Background

On November 6, 2020, plaintiff initiated this litigation, challenging USCIS's delay in adjudicating her Form I-539 and Form I-765 renewal applications under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. *See* Compl. ¶¶ 73–84. Less than two weeks later, on November 16, 2020, she filed a Motion for Preliminary Injunction, requesting that the Court "direct[] [d]efendants to immediately provide her with evidence of continuing work authorization beyond November 30, 2020 for the duration of this proceeding." Pl.'s Mot. at 2. Under the schedule suggested by the parties and agreed to by the Court, that motion became ripe for resolution on December 7, 2020. *See* Min. Order (Nov. 17, 2020); Pl.'s Mem. P. & A. Supp. Pl.'s Cross-Mot. Summ. J. & Opp'n Defs.' Mot. Summ. J. ("Pl.'s Reply"), ECF No. 18-1.[3]

---

[3] The parties filed and briefed cross-motions for summary judgment in combination with their briefing of plaintiff's Motion for Preliminary Injunction. *See* Defs.' Mot. Summ. J, ECF No. 11; Defs.' Opp'n Pl.'s Mot.

## II.     LEGAL STANDARD

A preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). To obtain relief, the moving party must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities" is in their "favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016). The first factor is also the "most important factor." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *see also Munaf v. Geren*, 553 U.S. 674, 690 (2008) ("[A] party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'" (quoting *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 428 (2006))).[4] A preliminary injunction "is an extraordinary . . . remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion" on each of the four factors. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted)

---

Prelim. Inj. & Mem. Law Supp. Mot. Summ. J. ("Defs.' Opp'n"), ECF No. 11-1 (consolidated opposition to motion for preliminary injunction and memorandum in support of motion for summary judgment); Pl.'s Cross-Mot. Summ. J. & Opp'n Defs.' Mot. Summ. J., ECF No. 18; Pl.'s Reply (consolidated memorandum in support of cross-motion for summary judgment, opposition to defendants' motion for summary judgment, and reply in support of motion for preliminary injunction). Those cross-motions remain pending.

[4]     The D.C. Circuit has previously followed a "sliding scale" approach to evaluating preliminary injunctions, but that approach is likely inconsistent with *Winter*, *see Archdiocese of Wash. v. Wash. Metro. Area. Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (observing that *Winter* may be "properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned"); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295–96 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (noting that "this Circuit's traditional sliding-scale approach to preliminary injunctions may be difficult to square with the Supreme Court's recent decisions in" *Winter* and *Munaf*), and therefore will not be employed here, *Singh v. Carter*, 185 F. Supp. 3d 11, 16–17 (D.D.C. 2016).

(quoting 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948, at 129–30 (2d ed. 1995)).

## III.  DISCUSSION

Plaintiff moves for injunctive relief, under Federal Rule of Civil Procedure 65, that would direct defendants to continue her employment authorization, which, as explained above, expired on November 30, 2020, for the duration of this litigation.  Pl.'s Mot. at 2; Pl.'s Mem. at 18–19.  The claims on which her request is premised challenge as unreasonable USCIS's delay in adjudicating her Form I-539 application to extend her H-4 status and her Form I-765 application to renew her employment authorization, and seek to compel prompt resolution of her pending applications under the APA and the Mandamus Act.  Compl. ¶¶ 73–84.  As explained below, plaintiff has not shown a clear likelihood of success on the merits of her claims and therefore has not demonstrated her entitlement to a preliminary injunction.

The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).  In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six factors to be considered:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotations and citations omitted).  The first factor is the most important.  *See In re Core*

9

*Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  This standard applies to both a mandamus petition and a claim of unreasonable delay under the APA.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *In re Core Commc'ns Inc.*, 531 F.3d at 855.  Applying the *TRAC* factors shows that plaintiff is not likely to succeed on the merits of her claims, under either the APA or the Mandamus Act, that action on her pending applications has been unreasonably delayed.

The first *TRAC* factor weighs in favor of defendants.  USCIS processes Form I-539 and Form I-765 applications "on a first-in, first-out" basis, Roller Decl. ¶ 2, with certain applications expedited based on criteria set forth by the agency, including a requirement that an applicant have submitted biometric data, *id.* ¶¶ 16–17; *see also* Defs.' Opp'n at 11–12.  In assessing USCIS's procedures for evaluating applications for various immigration benefits, courts have found that the agency's use of a first-in, first-out system "constitutes a 'rule of reason'" in the *TRAC* analysis.  *Uranga v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 20-0521 (ABJ), 2020 WL 5763633, at *11 (D.D.C. Sept. 28, 2020) (citing *Gonzales v. Cissna*, 364 F. Supp. 3d 579, 585–86 (E.D.N.C. 2019); *A.C.C.S. v. Nielsen*, No. CV 18-10759-DMG, 2019 WL 7841860, at *4 (C.D. Cal. Sept. 17, 2019)); *see also Muvvala v. Wolf,* Civ. A. No. 1:20-cv-02423 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) (finding that USCIS's "first-in, first-out method of adjudicat[ing]" applications to extend H-4 status or renew EADs "is governed by a rule of reason").

The second factor likewise favors defendants, at least for the moment.  Defendants correctly observe that "Congress has provided no specific timetable by which USCIS must adjudicate H-4 and Work Authorization applications."  Defs.' Opp'n at 10; *see also Muvvala*, 2020 WL 5748104, at *3.  Nonetheless, plaintiff points to 8 U.S.C. § 1571(b), the preamble to

10

legislation providing, in relevant part, for indefinite extensions of H-1B and H-4 status, which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days [or six months] after the initial filing of the application." Pl.'s Mem. at 13 n.2 (quoting 8 U.S.C. § 1571(b)); *see also id.* at 13; Pl.'s Reply at 4–5. Plaintiff argues that this language is evidence that Congress intended to set a six-month timetable for the processing of applications. Pl.'s Mem. at 13–14; Pl.'s Reply at 4–5.

Although the D.C. Circuit has noted that a "sense of Congress" preamble may be "precatory" or "non-binding," and is best treated "not as a statement of fact but [as] a statement of opinion," *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015) (citing *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008)), the second *TRAC* factor requires only some "indication of the speed with which [Congress] expects the agency to proceed," not a mandatory statutory timeline, *TRAC*, 750 F.2d at 80. Section 1571(b) clearly envisions that USCIS will adjudicate all covered applications for immigration benefits, including Form I-539 and Form I-765 applications, *see* 8 U.S.C. § 1571(b), within six months of filing, *see Uranga*, 2020 WL 5763633, at *12 (finding that § 1571(b) "is certainly an indication of what the legislature had in mind" and consequently that the second *TRAC* "factor weigh[ed] in favor of plaintiff," whose application "ha[d] been pending for over four years").[5] This congressional guidance is also "consistent with [USCIS regulations] providing that the earliest an H-4 visa holder may file for work reauthorization is 180 days before their EAD expiration." *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 WL 6462398, at

---

[5] *See also, e.g., A.C.C.S.*, 2019 WL 7841860, at *5 (noting that "district courts have interpreted [§ 1571(b)] to tip the scales slightly in favor of immigration benefit petitioners"); *Khan v. Johnson*, 65 F. Supp. 3d 918, 930 (C.D. Cal. 2014) ("Several courts have found this 'sense of Congress' [in § 1571(b)] highly relevant under the second factor."); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014) ("While the language of § 1571(b) is not mandatory, it nonetheless suffices to tip the second *TRAC* factor in [plaintiff's] favor."); *Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *4 (N.D. Cal. July 13, 2007) (determining that § 1571(b) "sets a normative expectation . . . of a reasonable processing time for an immigrant benefit application").

*8 (N.D. Cal. Nov. 3, 2020) (citing 8 C.F.R. § 274a.13(a)).  Plaintiff's applications, however, were filed on August 26, 2020 and, as of this writing, have been pending for less than four months.  Pursuant to § 1571(b), USCIS's delay beyond a six-month timeframe can be weighed in the *TRAC* analysis, but because the six-month period with respect to plaintiff's applications has not yet elapsed, at present, this factor favors defendants.

The third and fifth *TRAC* factors weigh in favor of plaintiff.  Though defendants contend that plaintiff suffers "purely economic harm" from the "interrup[tion of] her ability to work" that has resulted from USCIS's delay, Defs.' Opp'n at 14, human health and welfare are in fact at stake, especially in light of the ongoing COVID-19 pandemic.  At this unprecedented time, plaintiff has lost not only her position as a contractor for Fannie Mae and its accompanying economic security for her family, *see* Pl.'s Aff. ¶¶ 6–11, 14–18; Pl.'s Suppl. Aff. ¶¶ 1, 3, but also her driver's license, which expired with her EAD, Pl.'s Suppl. Aff. ¶ 9.  As a result, she is unable to complete basic errands independently.  *Id.*  If a member of plaintiff's family, or plaintiff herself, were to require medical care during this public health emergency, plaintiff would be unable to lawfully drive that person to a doctor's office or hospital, and could be unable to procure necessary supplies for her family.  Further, plaintiff's loss of employment may endanger her ability to pay the six employees hired to work at her new restaurant, *id.* ¶¶ 6–7, resulting in additional lost jobs and possibly impacting the health and welfare of those individuals, *see* Pl.'s Reply at 16–17.  These consequences far exceed mere economic harm, and clearly illustrate the consequences of USCIS's delays and backlogs for plaintiff, her family, and others in her life.  *See* Pl.'s Mem. at 13–15; Pl.'s Reply at 11–12.

The fourth factor is whether expediting plaintiff's Form I-539 and Form I-765 would harm other agency activities of equal or greater priority.  Defendants report that the delay in

processing plaintiff's applications results from an agency-wide backlog of unscheduled biometrics appointments, including plaintiff's, created by the four-month closure of USCIS Application Support Centers due to the COVID-19 pandemic. Defs.' Mem. at 13–14; Roller Decl. ¶¶ 6, 13; Defs.' Report at 3 (citing Roller Decl. ¶ 13). They further claim that plaintiff qualifies for neither expedited consideration of her applications, because she has not submitted biometrics information, *see* Defs.' Report at 3, nor waiver of the biometrics requirement, because waiver is unavailable to H-4 applicants under USCIS's Policy Manual, *see* Defs.' Report Resp. Court's Order of Dec. 9, 2020 ("Defs.' Dec. 9 Report") at 1–2, ECF No. 21. Therefore, defendants argue, granting plaintiff relief "would only serve to advance her applications improperly ahead of others who are faced with the same situation," Defs.' Opp'n at 13, all of whom confront immediate or impending loss of status and work authorization while USCIS "do[es] its best" (without modifying or waiving any of its requirements or policies) "to overcome these logistical hurdles," Defs.' Dec. 9 Report at 2.[6]

Put simply, defendants' position is that applicants, such as plaintiff and others similarly situated, must pay the price for USCIS's decisions, first, to require biometrics; second, to limit expedited processing to those applicants who have submitted biometrics; and third, to restrict the availability of waiver of the biometrics requirement, even in light of the extraordinary conditions created by the COVID-19 pandemic, which together have created the significant backlog in

---

[6]   Plaintiff alleges that she "submitted biometric data in connection with [her] application for an H-4 visa stamp at the U.S. Consulate in New Delhi, India," Pl.'s Third Aff. ¶ 2, and also "submitted biometric data" to U.S. Customs and Border Protection upon returning to the United States after traveling abroad, including on two occasions in 2019, *id.* ¶ 3, and that these three sets of biometric data already provided to the government should be used by USCIS to process her applications, Pl.'s Reply at 6–7. Defendants reject these suggested alternative sources of biometric data and represent that "USCIS does not have the technical (information technology) capability to submit Department of State-collected prints to the Federal Bureau of Investigation" to initiate a criminal background check, as is required to adjudicate an application to extend H-4 status or work authorization, such that plaintiff must submit yet another set of biometrics before her applications can be processed. Decl. of Brian J. Broderick ¶ 7, ECF No. 23-2.

which plaintiff's applications are trapped.  These decisions reflect USCIS's priority-setting and resource allocation in the context of processing applications.  *See* Defs.' Opp'n at 13–14.

Despite the significant burdens USCIS's approach imposes on blameless applicants, D.C. Circuit precedent recognizes "no basis for reordering agency priorities" with respect to such matters where "a judicial decree advancing one applicant" would not "cure [the agency's] incompetence, . . . even if it is severe," *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991), and places great emphasis on this consideration, refusing "to grant relief, even though all the other factors considered in *TRAC* favored it, where a 'judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations in original) (quoting *In re Barr Labs., Inc.*, 930 F.3d at 75); *see also, e.g.*, *Am. Hosp. Ass'n*, 812 F.3d at 192 (collecting cases that "rejected mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants"); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) ("[W]here resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities.").  As a result, the fourth factor weighs in the government's favor.

Finally, the sixth factor is neutral.  Plaintiff does not allege any bad faith, *see* Pl.'s Mem. at 15; Pl.'s Reply at 12, but "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," *TRAC*, 750 F.2d at 80 (internal quotations and citation omitted).

Taking the factors as a whole, the rule of reason, the possibility that USCIS may still adjudicate plaintiff's applications within the six-month window for resolution of an application

for immigration benefits envisioned by Congress, and the fact that granting plaintiff relief would merely reorder her applications relative to other currently pending petitions likely outweigh the substantial hardships this delay has caused plaintiff.  The delay is therefore unlikely to be found "so egregious as to warrant mandamus" or relief under the APA.  *Id.* at 79.  For this reason, plaintiff has not demonstrated a clear likelihood of success on the merits of her claims under the APA or the Mandamus Act for unreasonable delay, and her request for a preliminary injunction must be denied.

Though plaintiff has failed to show that she is entitled to the extraordinary relief she seeks under the *TRAC* factors, she rightly points to the central frustration of her case: "it stands to reason that if an agency requires applicants applying for renewal of work permission to wait until the 6 month window prior to expiration of the document being renewed, that the agency will act in less than six months . . . to deliver a work permit to the applicant." Pl.'s Mem. at 13. As a result of USCIS's delay and processing backlogs, and its continuing failure to develop a solution to those obstacles, plaintiff finds herself, through no fault of her own, unable to work, drive, or fully participate in society.  Her family confronts increased financial stress, and her six employees stand at increased risk of losing their jobs during a global pandemic.  Plaintiff's predicament is deeply troubling, particularly in light of her longstanding legal residence and successive authorizations to work in the United States.  *See supra* Part I.B.

Accordingly, given this situation, the Court will require defendants to provide regular biweekly updates, with detailed information from knowledgeable USCIS personnel, on the status of plaintiff's H-4 and EAD applications throughout the pendency of this case until resolved. Moreover, the close of the six-month window suggested by Congress for adjudication of plaintiff's applications, on February 26, 2021, is rapidly approaching.

## IV.  CONCLUSION

For the foregoing reasons, USCIS's delay in adjudicating plaintiff's applications to extend her H-4 status and renew her work authorization is not sufficiently unreasonable at present for the Court to compel agency action under the APA or the Mandamus Act.  Plaintiff has therefore failed to demonstrate that she is likely to succeed on the merits of her claims, and her motion for preliminary injunction must be denied.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.


Date: December 15, 2020

_____
BERYL A. HOWELL
Chief Judge